UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN DAY,

    Plaintiff,

v.

VARUN DATTA, et al.,

    Defendants.

Case No. 3:21-CV-409 JD

**OPINION AND ORDER**

    Plaintiff John Day is suing Defendants Varun Datta and 4New Ltd. for defrauding him into purchasing a hefty amount of KWATT, a new cryptocurrency Mr. Datta and 4New started marketing in the summer of 2018. According to Mr. Day, the Defendants told him during a months-long series of communications that KWATT was valuable and worth holding. Mr. Day acquired the cryptocurrency based on those communications. It was only several months after he started amassing KWATT holdings that Mr. Day discovered the cryptocurrency was, in reality, worthless. Before the parties could get to the merits of Mr. Day's case, the Defendants moved to dismiss the lawsuit based on what they argue is the Court's inability to exercise personal jurisdiction over either of them. Mr. Day opposed the Defendants' personal jurisdiction argument, and the issue is now fully briefed. For the following reasons, the Court finds dismissal proper for lack of personal jurisdiction.

**A.    Factual Background**

    Mr. Day is a citizen of Indiana and was living in Indiana when 4New and Mr. Datta allegedly began communicating with him about 4New's new cryptocurrency KWATT. (DE 1 at 1–2.) 4New is, and was at the time its representatives communicated with Mr. Day, a private

limited company formed in and doing business out of the United Kingdom. (DE 11-2 ¶ 4.) 4New has no connections to Indiana outside of the fact that it operates a publicly accessible website and that some of its representatives allegedly communicated with Mr. Day, an Indiana resident, while Mr. Day was present in Indiana. Mr. Datta is 4New's chief executive officer and was, along with other 4New employees, allegedly responsible for the fraudulent communications about KWATT that Mr. Day received. (*Id.* ¶¶ 13–15; DE 12-1 ¶ 2.) It is not clear from the pleadings and briefing where Mr. Datta is a citizen given that Mr. Day and Mr. Datta appear to disagree on that point. (DE 1 ¶ 11; DE 11-1 ¶¶ 3–4.) But what is clear is that Mr. Datta is not a citizen of Indiana and has no connection to Indiana other than allegedly having communicated with Mr. Day while Mr. Day was in Indiana.

Mr. Day's communications with Mr. Datta and 4New began in the summer of 2018, but it is not clear whether Mr. Day or one of the Defendants was the first to initiate contact. (DE 1 ¶¶ 2–3; DE 12-1 ¶ 7.) The communications that led Mr. Day to purchase KWATT lasted from that summer through January 3, 2019, the date Mr. Day has alleged he discovered the fraud and stopped acquiring the cryptocurrency. (DE 1 ¶¶ 18–24.) During that time, Mr. Datta and other 4New representatives allegedly made representations to Mr. Day about KWATT being a legitimate, valuable cryptocurrency that caused Mr. Day to engage in more than 100 transfers to obtain KWATT (*Id.* ¶¶ 3, 18, 20–22; DE 12-1 ¶ 10.) While Mr. Day did not specify how he made those transfers, information from the Defendants, which Mr. Day has not disputed, shows that Mr. Day had to go to an online exchange that neither of the Defendants controlled to make his purchases. (DE 11-2 ¶¶ 17–21.)

The communications that Mr. Day contends he had with the Defendants all occurred either over the phone or through other digital media like websites and messaging applications,

and they all occurred while Mr. Day was physically in Indiana. (DE 11-1 ¶¶ 9–10; DE 12-1 ¶¶ 2, 6–9.) Mr. Day has not alleged any in-person communications between himself and the Defendants, and he has put forward no evidence that Mr. Datta or any 4New representatives traveled to Indiana, contracted in Indiana, or otherwise made contact with any Indiana entity or the state itself other than communicating with him online or over the phone while he was in the state. Mr. Day alleges that he exchanged more than 500 messages with Mr. Datta and other 4New employees on the messaging application Telegram, attended five 4New teleconferences in 2019, spoke with Mr. Datta over the phone once after giving Mr. Datta a phone number to call with an Indiana area code, exchanged twelve emails with 4New, and also communicated with Mr. Datta through LinkedIn messaging during the course of their dealings. (DE 12-1 ¶¶ 3–9.) Mr. Day also sent Mr. Datta an invoice for consulting services on August 7, 2019, which included Mr. Day's home address, but Mr. Day never made clear whether or how that invoice was related to his acquisition of KWATT given it related to Mr. Day's own "consulting services" and was sent roughly eight months after he had discovered the fraud and stopped buying KWATT. (*Id.* ¶ 12.)

**B.     Standard of Review**

The Defendants have moved to dismiss Mr. Day's claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Once a defendant moves to dismiss on that basis, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). To that end, the parties may submit, and a court may consider, materials outside of the pleadings. *Id.* When a district court rules on a defendant's motion to dismiss based only on the submission of written materials, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *Id.*; *Hyatt*

*Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Court must also "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Purdue*, 338 F.3d at 782.

**C.     Discussion**

The Court has personal jurisdiction over a defendant to the same extent a state court in this forum could exercise personal jurisdiction over that defendant. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). Here, the forum state is Indiana, and Indiana's long-arm statute permits its courts to exercise personal jurisdiction to the full extent permitted under federal law. *Id.*; *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) ("Indiana's long-arm provision now extends to the limits of the Constitution."). Therefore, to determine whether it may exercise jurisdiction over Mr. Datta and 4New, the Court must decide "whether 'the exercise of jurisdiction comports with the limits imposed by federal due process.'" *Advanced Tactical*, 571 U.S. at 283 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

There are two potential types of personal jurisdiction that could apply, general personal jurisdiction and specific personal jurisdiction. While the Defendants briefed arguments on both types of personal jurisdiction in conjunction with their motion, Mr. Day implicitly conceded that the Court could not exercise general personal jurisdiction over the Defendants. (DE 12 at 4 n.1) ("Day does not believe that [general jurisdiction] analysis is relevant to the present facts and does not address that argument."). The Court therefore need only consider the possibility of its exercising specific personal jurisdiction over the Defendants.

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the Court must find the defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to' those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton*, 465 U.S. at 775). The "constitutional touchstone" for specific jurisdiction "remains whether the defendant purposefully established 'minimum contacts' in the forum." *Burger King*, 471 U.S. at 474. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself* ' creates with the forum . . . ." *Walden*, 134 S. Ct. at 1121 (quoting *Burger King*, 471 U.S. at 475). Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id.*; *see Advanced Tactical*, 751 F.3d at 801.

Thus, specific jurisdiction exists where: (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state; (2) the alleged injury arises out of the defendant's forum-related activities; and (3) the exercise of specific jurisdiction comports with traditional notions of fair play and substantial justice. *See Felland v. Clifton,* 682 F.3d 665, 673 (7th Cir. 2012). And the personal jurisdiction inquiry in a case involving an intentional tort, like the fraud alleged here, typically focuses "on whether the conduct underlying the claim was purposely directed at the forum state." *Id.* at 674. There are three requirements to demonstrate "purposeful direction" in the intentional torts context: "(1) intentional conduct (or intentional and allegedly tortious conduct); (2)

expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Edelson PC v. Girardi*, 2021 WL 3033616, at *5 (N.D. Ill. July 19, 2021) (citing *Tamburo*, 601 F.3d at 703) (internal quotations omitted). The Court must assess Mr. Datta's and 4New's potential contacts to Indiana individually. *Purdue*, 338 F.3d at 784. In their briefing, the Defendants argued that there is no evidence to show either of them expressly aimed their conduct at Indiana itself or purposefully established minimum contacts with Indiana in a way that would support the Court's exercise of personal jurisdiction.

    A minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285–86 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). The Seventh Circuit has long followed this approach. *See Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) ("We do not believe that the Supreme Court, in *Calder* [*v. Jones*, 465 U.S. 783], was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff."). But the Seventh Circuit took advantage of the *Walden* decision to reaffirm the approach, holding that "after *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical*, 751 F.3d at 802; *see also Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 397 (7th Cir. 2020) (quoting *Walden*, 571 U.S. at 290) ("'[T]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.'").

6

The only arguments for or evidence of minimum contacts that Mr. Day has put forward in this case are that the Defendants communicated with him while he was physically present in Indiana and, potentially, that 4New operated a website that was accessible from Indiana. (DE 1 ¶ 13) ("[a]s part of 4New's activities to market and sell KWATT, it availed itself of Indiana's market through the internet and world wide web, specifically communicating with Day, all while Day was located in and a citizen of St. Joseph County, Indiana."); (*id.* ¶ 14) ("Datta directly messaged Day while Day was in St. Joseph County, Indiana."); (DE 11-1 ¶¶ 5–6; DE 11-2 ¶¶ 5–13; DE 12 at 1–3.) These potential contacts are insufficient to rise to the level of minimum contacts for exercise of specific personal jurisdiction.

First, the Defendants' alleged communications with Mr. Day while Mr. Day was in Indiana only establish an incidental and tenuous connection between the Defendants and the forum state of Indiana. The general fact that Mr. Day happened to be in Indiana when he received the alleged communications from each Defendant is not enough to connect the Defendants to Indiana itself. *See Walden*, 571 U.S. at 285–86 ("[T]he plaintiff cannot be the only link between the defendant and the forum."). There has to be something more if the Court is to find that either of the Defendants purposefully connected with Indiana through their alleged communications. *See id.* ("[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *Curry*, 949 F.3d at 397.

But there is not something more. All of the communications Mr. Day has alleged between himself and the Defendants occurred either online or over the phone, which means neither Defendant ever created a physical connection with Indiana and Mr. Day did not have to physically be in Indiana to have received any of the communications. (DE 12-1 ¶¶ 3–12.)

7

Additionally, the vast majority of the communications that Mr. Day cited as potentially establishing minimum contacts had no specific tie to Indiana at all, and a fair number of them occurred after Mr. Day had already stopped purchasing KWATT in January 2019, which means they cannot have been connected to inducing the purchases of KWATT that Mr. Day has cited as the source of harm in this lawsuit. (DE 12-1 ¶¶ 3–7, 12); *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (holding that a defendant's activities connecting it to the forum state must be related to the basis of the underlying controversy).

That left Mr. Day to rely on the argument that there are minimum contacts between each Defendant and the forum because the "Defendants knew that [he] lived in Indiana when [the] Defendants made the alleged misrepresentations." (DE 12 at 7.) Mr. Day's only valid evidence in support of the Defendants' knowledge that he lived in Indiana is a phone call Mr. Datta made to Mr. Day using Mr. Day's Indiana phone number in August 2018 (DE 12-1 ¶ 9) and Mr. Datta's communications with Mr. Day over LinkedIn starting in June 2018 while Mr. Day's LinkedIn profile indicated he was working in Mishawaka, Indiana (DE 12-1 ¶ 7). While that evidence is far from definitively showing Mr. Datta knew or cared that Mr. Day was in Indiana, and requires the further attenuated inference that because Mr. Datta knew 4New also knew, the Court will accept as true for purposes of this order that both Defendants knew Mr. Day was an Indiana resident. *See Tamburo*, 601 F.3d at 700 (holding that the Court must take all well-pleaded facts as true and resolve any factual disputes in favor of the plaintiff at this stage).

Even accepting that both Defendants knew Mr. Day lived in Indiana though, Mr. Day still cannot show minimum contacts that could support personal jurisdiction over either Defendant. In short, he has still, at best, only shown that the Defendants' alleged communications were

purposefully directed at him while he happened to be in Indiana, not that the Defendants ever directed their communications in a way that connected them to the forum itself. Personal jurisdiction is only proper when a defendant's conduct goes beyond the plaintiff himself and connects to the broader forum state in some way. *See Walden*, 571 U.S. at 285–86; *Johnson v. Hartwell*, 690 F. App'x 412, 413–14 (7th Cir. 2017) (holding personal jurisdiction is not present when the plaintiff's location was "incidental" to the conduct); *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 495 – 96 (7th Cir. 2014) (holding personal jurisdiction not present in Illinois when Wisconsin defendant communicated and contracted with Illinois company but otherwise had no relationship or contact with Illinois); *see also Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019); *Tamburo*, 601 F.3d at 703. The Defendants' communications here never went past Mr. Day to connect more broadly to the forum state of Indiana and thus cannot be a basis for finding either Defendant is subject to specific personal jurisdiction in Indiana.

To further illustrate this point, the Court looks to the Supreme Court's decision in *Calder* and the Supreme Court's subsequent explanation in *Walden* of its basis for the *Calder* decision. In *Calder*, a California actress brought a libel suit in California state court against a reporter and editor for publishing an article that was circulated to roughly 600,000 California readers. 465 U.S. at 785. While it was clear to the Supreme Court that the California actress herself had been harmed in California, that personal harm within the state was not enough. Instead, it was the "various contacts the defendants had created with California (and not just with the plaintiff)" that the Supreme Court found allowed the exercise of personal jurisdiction in California. *See Walden*, 571 U.S. at 287 (citing *Calder*, 465 U.S. at 788). Those contacts included the defendants' California sourcing of the allegedly libelous article and the "injury to the plaintiff's reputation in

9

the estimation of the California public" in a way that connected the defendants' conduct not just to the plaintiff but to California itself. *Id.* at 288.

Those same connections between the Defendants, their alleged activities, and Indiana are not present here. The only contact through communications that either Defendant is alleged to have had is with Mr. Day himself. And the only injury Mr. Day has alleged is an injury to himself because he was fraudulently induced to acquire worthless KWATT. (DE 1 ¶¶ 8–9.) There is thus no evidence that either 4New or Mr. Datta's conduct extended to any other Indiana citizens or affected Indiana in any way other than harming Mr. Day. While Mr. Day argued his own injury could potentially have implicated Indiana's "interest in redressing fraud committed against its citizens" (DE 12 at 3), the Supreme Court has made clear that injury to a citizen of a state because of activities purposefully directed toward that citizen is not enough to create specific personal jurisdiction over the defendant in that state without more. *See Walden*, 571 U.S. at 287; *Calder*, 465 U.S. at 788. There is not more here.

Having considered and dismissed Mr. Day's argument that the Defendants' communications created sufficient minimum contacts, the Court moves to briefly explain why Mr. Day's only other potential basis for jurisdiction, 4New's operation of its website, also falls short. (DE 1 ¶ 13) (alleging that 4New "availed itself of Indiana's market through the internet and world wide web"). Mr. Day hampered any website-based argument for personal jurisdiction over 4New by only raising it as a possibility in his complaint and then failing to follow up on it in his subsequent briefing. (DE 12.) His lack of follow-up meant that he never contradicted 4New's description of its website in its submitted affidavit as providing information about KWATT but lacking the ability to actually process transactions or otherwise deal in cryptocurrency, which the Court accepts. (DE 11-2 ¶¶ 14–21.) Mr. Day also did not dispute

10

4New's statement in its affidavit that its website did not specifically target Indiana or its citizens, did not qualify as "interactive" given its design and capabilities, and was not the medium through which Mr. Day acquired his KWATT given that the KWATT was only sold in online transactions on websites and exchanges that neither 4New nor Mr. Datta operated or controlled. (DE 1 ¶¶ 5; DE 11-2 ¶¶ 17–20.) Those undisputed representations indicate that 4New's website did not specifically connect 4New to Indiana as the caselaw requires. (DE 11 at 11–13; DE 11-2 ¶ 16); *see Advanced Tactical*, 751 F.3d at 803 (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011)) (explaining that a website can be a basis for personal jurisdiction only when it is used to target and develop contacts with a specific forum). Therefore, the Court finds that 4New's operation of its website did not create a basis for the Court to exercise personal jurisdiction over 4New and that Mr. Day has thus failed to put forward any basis for the Court to exercise specific personal jurisdiction over either defendant.

  Before concluding, the Court briefly notes that the caselaw that Mr. Day cited to the Court to try to counter the Defendants' arguments against personal jurisdiction fell short for various reasons. Problematically for Mr. Day, the cases he cited were each non-precedential and were further either pre-*Walden* and out of sync with the Supreme Court's confirmation that the relevant connection for an exercise of personal jurisdiction must be with the forum itself and not simply the plaintiff, or were distinguishable because the facts involved showed far more of a connection to the forum state than is present here. *See* (DE 12 at 5–8) (citing *Johnson v. Levine*, 2010 WL 11565552 (S.D. Ill. Sept. 17, 2010) (finding four telephone calls to a plaintiff's Illinois number constituted sufficient minimum contacts pre-*Walden*); *Summit Grp. Holdings, LLC v. O'Donnell*, 2007 WL 1549920 (N.D. Ind. May 25, 2007) (finding that numerous phone and email conversations between the Texas defendant and Indiana plaintiffs, along with a visit by the

defendant to Indiana, while negotiating contracts and a 42-month loan constituted sufficient minimum contacts); *Honda Mfg. of Indiana LLC v. Custom Machines, Inc.*, 2016 WL 7156081 (S.D. Ind. Dec. 7, 2016) (finding contacts between Michigan defendants and Indiana plaintiff involving negotiations and contracting by Michigan defendants to complete an automation project at plaintiff's Indiana plant established sufficient minimum contacts). Further, while Mr. Day pointed to the need for the Court to weigh the interest that Indiana may have in protecting its citizens from fraudulent conduct (DE 12 at 11), the Defendants were correct to note that the Supreme Court weighed and addressed those issues that fall into the generally recognized "traditional notions of fair play and substantial justice" considerations when it narrowed the scope of purposeful availment to make clear that a plaintiff must show contact with the forum itself and not just contacts with the plaintiff. (DE 13 at 8) (citing *Walden*, 571 at 283).

As the Court explained above, Mr. Day has only alleged facts that show a connection between the Defendants and himself, not a sufficient connection between the Defendants and the forum state of Indiana. *See Walden*, 571 U.S. at 288 (holding it is not enough to simply show an effect on the plaintiff who lives in a forum state but that the effect must be to the forum state itself); *Advanced Tactical*, 751 F.3d at 802. The Court thus finds that there are insufficient contacts between each of the Defendants and the state of Indiana for the Court to properly exercise personal jurisdiction over either Mr. Datta or 4New.

**D.      Conclusion**

For the foregoing reasons, the Court GRANTS Defendants Varun Datta and 4New Ltd.'s motion to dismiss for lack of personal jurisdiction (DE 10) and dismisses Plaintiff John Day's claims without prejudice.

12

SO ORDERED.

ENTERED: May 2, 2022

                /s/ JON E. DEGUILIO
                Chief Judge
                United States District Court